UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PETER GERMANY,                              :
                                            :
        Petitioner,                 :      **OPINION AND ORDER**
                                            :      06 CV 01201 (DLI)
    -against-                              :
                                            :
UNITED STATES OF AMERICA,                   :
                                            :
        Respondent.                 :
------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Petitioner Peter Germany ("Petitioner") is detained at the Queens Private Corrections Facility, 882-22 150th Avenue, Jamaica, by virtue of an Extradition Certification and Order of Commitment issued by United States Magistrate Judge Robert M. Levy on February 28, 2006. The Extradition Certificate was based on Petitioner's two convictions, *in absentia,* in France for violating provisions of the French Penal Code, French Health Code, and the French Customs Code that prohibit the importation and distribution of narcotics. Petitioner now seeks a writ of habeas corpus pursuant to 18 U.S.C. § 3184 and 28 U.S.C. §§ 2241 and 2242, alleging that the evidence presented by the United States government at the extradition hearings to support France's request for extradition did not establish probable cause that Petitioner was guilty of the crimes charged, and, therefore, that his detention violates due process. For the reasons set forth below, the petition is denied.

**Background**

Petitioner has been tried and sentenced by the Republic of France, twice, both times *in absentia.* Those convictions, detailed below, led the French government to request Petitioner's extradition to France to serve his sentence.

*The Judgment of September 17, 2004*

France's request for extradition made on January 26, 2005 was based on a judgment rendered against Petitioner, *in absentia*, on September 17, 2004. In this judgment, the Tribunal de Grande Instance (High Court) of Aix en Provence, France, sentenced Petitioner to sixteen years in prison. (Memorandum of Law in Opposition to Petition Under 28 U.S.C. § 2241, ("Opposition") Exhibit D.1).

According to the evidence presented at trial, the French government's investigation of Petitioner started in early 2002. On or about June 15, 2002, Georges Sainte-Rose was arrested in Sainte-Anne, Martinique, and accused of importing 17.681 kilograms of cocaine into French territory. (Opposition 8).

After his arrest, Sainte-Rose told French law enforcement authorities and the examining magistrate that a man he knew as "Peter MacFarlene" was a part of the drug importation network. According to Sainte-Rose, MacFarlene asked him if he had any contacts in Paris who were interested in distributing cocaine. In exchange for finding a Paris based distributor, MacFarlene offered to help Sainte-Rose settle in St. Lucia (Opposition, Exhibit D.5).

According to Sainte-Rose, MacFarlene's organization uses fishermen to transport cocaine from St. Lucia to Martinique. In Martinique, MacFarlene and Christian Cardon picked up the cocaine and packaged it at Cardon's house. MacFarlene then cut the cocaine and turned it over to Sainte-Rose. Sainte-Rose then transported the cocaine to London and Paris. Sainte-Rose testified that the man he knew as MacFarlene is Petitioner. MacFarlene had the same physical description as Petitioner. Sainte-Rose told French authorities that he was able to identify Petitioner as MacFarlene because he received deliveries of the cut cocaine directly from

Petitioner on several occasions. (Opposition, Exhibits D.5, D.7 and D.8). Sainte-Rose also knew Petitioner's telephone numbers and offered detailed information about Petitioner's car.

French authorities also apprehended and interrogated Cardon (Opposition, Exhibit D.6). Cardon stated that he had met MacFarlene in 1999 and that MacFarlene offered him a job picking up drugs delivered by fisherman and taking them to his house for packaging. According to Cardon, after the packaging, MacFarlene cut the cocaine and then turned it over to Sainte-Rose. (Opposition, Exhibits D. 6 and 8). Cardon told French investigators that he picked up the cocaine on the beach in St. Lucia three times, and the total quantity of cocaine he picked up was 39 kilograms. Cardon stated that MacFarlene was with him on the beach on two of the pickups. (Opposition, Exhibits D. 6 and 8). Cardon also identified Petitioner as the man he knew as MacFarlene.

At the trial, Cardon also testified to his role in the overall distribution scheme. Cardon stayed at Etap Hotel at MacFarlene's request. MacFarlene would arrive at the hotel before Cardon and leave a bag containing cocaine in the room in which Cardon was to stay. Cardon was responsible for collecting a 200,000 Franc payment for the cocaine from Luciano Papaya and two unidentified individuals. (Opposition, Exhibit D. 6). Papaya and Bernard Gleize also testified at the trial as to their role in the conspiracy and affirmed that they knew MacFarlene under the name of Peter. (Opposition, Exhibit D.7). As further evidence of Petitioner's involvement in the conspiracy, the French government introduced into evidence hotel receipts and airline tickets to demonstrate that Petitioner, under various aliases, traveled to France with Sainte-Rose and Cardon on four separate occasions (Opposition, Exhibit D.8).

In accordance with French procedure, the evidence presented by the French government convinced Magistrate Dominique Jaubert of the Tribunal de Grande Instance d'Aix en Provence

to convict Petitioner of the crimes charges, *in absentia*. Petitioner was sentenced *in absentia* to sixteen years in prison.

*The Judgment of July 12, 2005*

France made a request for extradition on January 19, 2005, which was supplemented on February 9, 2005, and again on October 20, 2005. The original extradition request was made after a provisional arrest warrant was issued by the Créteil City High Court. Petitioner was arrested in this district on that warrant. Even though the request for extradition had not yet been granted, the Créteil City High Court tried Petitioner *in absentia*. On July 12, 2005, the court found Petitioner guilty of criminal conspiracy to import and distribute drugs and sentenced him, *in absentia*, to ten years in prison. (Opposition, Exhibit C.9). Once Petitioner was found guilty, the request for extradition was supplemented to reflect this fact.

In the trial that resulted in the July 12, 2005, judgment, the French government presented the following evidence: As a result of a seizure of 3.125 kilograms of cocaine that originated from Martinique at Orly International Airport in Paris, French authorities launched an investigation that led them to Eric Matime whose cellular telephone conversations were monitored. (Opposition 4). Subsequently, twelve kilograms of cocaine were found in Matime's home. Matime was arrested and cooperated with the investigation. Matime testified that he was an intermediary in a cocaine distribution network headed by Petitioner that imported cocaine from Martinique to France. (Opposition, Exhibit C.3). Matime led the police to Rene Paul Dufrenot, another cooperating co-defendant, who also described Petitioner as the head of the drug distribution network. (Opposition, Exhibit C.4).

Matime was a middleman between buyers in France and sellers in Martinique. Both Matime and Dufrenot testified that Dufrenot gave cocaine to Matime who, in turn, stored the cocaine in his home and distributed the cocaine to other middlemen who eventually imported it to France. For his work, Matime was paid 50,000 Francs. (Opposition, Exhibit C.5). Matime knew of Petitioner's role as head of the network through Dufrenot who acted as an agent of Petitioner. (Opposition, Exhibit C.5). Matime knew that Petitioner lived in St. Lucia and worked with a man named Marc who also lived in St. Lucia. (Opposition, Exhibit C.3 and 5). According to Matime, the cocaine found in his home originated with Petitioner. (Opposition, Exhibit C.5).

The French government wiretapped certain telephone conversations between Matime and a creole male whom they ultimately determined to be Petitioner. (Opposition, Exhibit C.5). In these conversations, Petitioner spoke with an English accent and introduced Dufrenot as his lieutenant in Martinique. (Opposition Exhibit C.5). Petitioner also stated that he was worried about the cocaine reaching Paris. *Id*. Matime believed that these conversations demonstrate that the cocaine found in his home originated with Petitioner.[1] (Opposition, Exhibit C.9).

When Dufrenot was taken into custody, he stated that he was the individual on the wiretaps and he was speaking with "Marc, the Saint Lucian . . . his real first name is Peter."

---

[1] The Petition cites to several discrepancies in Matime's testimony that Petitioner contends eviscerates the probable cause for his extradition. He contends that Matime was mistaken as to Petitioner's location during the calls. During the September 23, 2003, call, Matime stated that the person he was speaking to was in St. Lucia but travel documents place Petitioner in New York on that day. Similarly, during the October 1, 2003, conversation, Matime believed that he was speaking with Petitioner while Petitioner was in England, when, in fact, travel documents place Petitioner in New York on that date. Petitioner further asserts that the person to whom Matime spoke was a different individual named "Peter." Judge Levy dismissed this discrepancy as simply being a result of Matime's confusion. The government, for its part, contends that Petitioner was concealing his whereabouts by lying to Matime about his location. In any event, these discrepancies do not undermine the probable cause for defendant's extradition.

(Opposition, Exhibit C.4). Specifically, Dufrenot testified that he met an individual known as "Marc" while in jail in Fort-de-France in 1992-1993. (Opposition, Exhibit C.4). After his release from prison, Dufrenot was reacquainted with Marc and Marc asked him to transport ten kilograms of cocaine to France. Dufrenot refused to transport the cocaine but got Matime to do so. Dufrenot remained involved in the conspiracy and Marc paid him 700 Euros to pick up ten packages of cocaine from a man named "Jean-Luc" (Opposition, Exhibit C.4). Matime and Dufrenot picked up the cocaine together. Marc then left for England. *Id.* Dufrenot told the authorities that this was his first and only interaction with this drug distribution network. *Id.*

Several days later, Dufrenot was interviewed again. The authorities hoped to pin down the identity of Marc and accused Dufrenot of being purposely vague. *Id.* Under interrogation, Dufrenot testified that Marc's "real name it is Peter Germany. It is a St. Lucian man. He is head of the network." and that he was an agent of Petitioner (Opposition, Exhibit C.4). Dufrenot proceeded to map out the entire network, including his role, which was much more involved than he had previously let on.[2] *Id.* Dufrenot admitted that he recruited Matime to store and transport the cocaine and organize its routing for 50,000 Francs.

*The Extradition Proceeding*

Petitioner was discovered in this district and, at the request of France, was arrested in October 2004 pursuant to a warrant issued by United States Magistrate Judge William D. Wall. As noted above, the warrant was based on the September 17, 2004, judgment. On January 19,

---

[2] Petitioner makes much of the fact that Dufrenot changed his story while under interrogation– an issue which, as noted below, goes to Dufrenot's credibility and does not go to probable cause for Petitioner's extradition. Moreover, Petitioner points out that Dufrenot identified two of Petitioner's accomplices, one of whose name is "Marc." Petitioner asserts that the Marc who Dufrenot referred to is not Petitioner.

2005, France requested Petitioner's extradition pursuant to the Extradition Treaty Between the United States of America and France ("Treaty") so that Petitioner could return to France to face the charges in the Créteil City High Court. *See* Extradition Treaty Between the United States of America and France, U.S.- Fr., Apr. 23, 1996, S. Treaty Doc. No. 105-13 (1997). The January 26, 2005 request for extradition was made so that Petitioner could serve his sentence imposed as part of the September 17, 2004 judgment.

As part of the extradition proceedings, Judge Levy held several hearings. After the hearings, Judge Levy issued a Memorandum and Order concluding that there is probable cause to believe that Peter Germany is guilty of narcotics importation and conspiracy to commit drug trafficking. Accordingly, Judge Levy found that the terms of the treaty and 18 U.S.C. § 3184 have been met and Petitioner was subject to extradition. On February 28, 2006, Judge Levy issued an Extradition Certification and Order of Commitment based upon his Memorandum and Order, thereby granting both the January 19, 2005, and January 25, 2005, extradition requests.

Petitioner stayed his extradition and filed a petition for writ of habeas corpus on March 17, 2006.

**Discussion**

An order certifying a request for extradition cannot be reviewed on direct appeal because "[e]xtradition orders do not ... constitute 'final decisions of a district court,' appealable as of right under 28 U.S.C. § 1291." *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976), *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). However, an individual subject to extradition may have his extradition order reviewed by seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See, e.g., Spatola v. United States of America.* 925 F.2d 615, 617 (2d Cir.

1991). A habeas court's review of an order of an extradition order is highly circumscribed. *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973). Habeas corpus, however, is not a means of rehearing what a judge presiding over an extradition hearing has already determined. *Ahmad v. Wigen,* 910 F.2d 1063, 1066 (2d Cir. 1990). Rather, "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offen[s]e charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925). The Petitioner's writ of habeas corpus is denied because Judge Levy had jurisdiction, the crimes petitioner is charged with were within the scope of the treaty and there were reasonable grounds to believe that Petitioner was guilty of the crimes charged.[3]

<u>Judge Levy had Jurisdiction Over the Extradition Proceedings</u>

Judge Levy had jurisdiction to hear the case by virtue of 18 U.S.C. § 3184. That statute states, in relevant part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . ., any justice or judge of the United States, or any magistrate judge authorized so to do by a Court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, . . . , issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that evidence of criminality may be heard and considered . . . .

---

[3] The Petition does not challenge Judge Levy's jurisdiction and does not challenge that the crimes charged by France are within the scope of the treaty. ( Petition 3). However, for the sake of thoroughness, the court will briefly review Judge Levy's jurisdiction and whether or not the crimes charged are within the scope of the treaty.

Here, all the prerequisites to jurisdiction were met: There is an extradition treaty in full force and effect between the United States and France. The government filed a complaint under oath, and Petitioner was found within this district.

18 U.S.C.S. § 3184 does not require a specific delegation of authority from a district judge to a magistrate judge so that the magistrate judge may conduct extradition proceedings. *See, e.g., Austin v Healey,* 5 F3d. 598 (2d Cir. 1993). Nevertheless, in the Eastern District of New York, magistrate judges are specifically empowered to conduct hearings and consider evidence in extradition proceedings. Local Crim. R. 58.1(b). Judge Levy undisputably had jurisdiction to hear this matter.

The Offenses Charged Are Within the Scope of the Treaty

The offenses with which Petitioner was charged and adjudged guilty in France are encompassed by the Treaty. Article 2 of the Treaty describes the offenses for which extradition may be sought. It states in pertinent part:

1. Acts shall be extraditable if they are punished under the laws in both states by deprivation of liberty for a maximum of at least one year or by more severe penalty . . . .
2. An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of, an offense described in paragraph 1.
3. For the purposes of this Article, an offense shall be an extraditable offense:
    a) Whether or not the laws in the contracting states place the offense within the same category of offenses or describe the offense by the same terminology. . . .

*See* Extradition Treaty Between the United States of America and France, U.S.- Fr., Apr. 23, 1996, S. Treaty Doc. No. 105-13 (1997). Petitioner was sentenced *in absentia* by the French

government on two occasions for the importation, acquisition, possession, transportation, and disposition of narcotics as well as for conspiracy to do the same. There is no dispute that Petitioner's convictions are for offenses that are punishable in both the United States and France by "deprivation of liberty for a maximum of at least one year or by more severe penalty." The French courts sentenced Petitioner to between ten and sixteen years of imprisonment on the various charges.[4] Under United States law, Petitioner's conduct would constitute the crimes of illegal drug importation, in violation of 21 U.S.C. § 952; exportation, in violation of 21 U.S.C. § 953; possession with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and conspiracy to commit these crimes, in violation of 21 U.S.C. § 846. These crimes can carry a maximum term of imprisonment of 20 years or more depending on the quantity of cocaine involved and whether the accused has previously been convicted of drug or violent crimes. *See* 21 U.S.C. §§ 841(b)(1)©, 960(a), 960(b)(3) (Opposition, Exhibit F. Page 7). In any event, when addressing whether an offense is covered under a treaty, the court is only interested in rough parity– there is no requirement that statutes be identical. *See, e.g., Collins v. Loisel,* 259 U.S. 309, 312 (1922) ("[i]t is enough if the particular act charged is criminal in both jurisdictions.").

There Was Probable Cause to Establish that Petitioner is Subject to Extradition

Article 10 of the Treaty establishes extradition procedures and sets forth the documentation required to support the request for extradition:

> A request for extradition of a person who is sought for prosecution shall also be supported by:

---

[4] Petitioner's offenses were punishable under articles 222-36 and 222-37 of the French Penal Code. Article 450-1 of the French Penal Code provides that engaging in a conspiracy to violate articles 222-36 and 222-37 is also punishable by ten years' imprisonment.

***

b) In the case of a request submitted by France, an original or a duly authenticated copy of the warrant or order of arrest and such information as would justify the committal for trial of the person if the offenses had been committed in the United States.

***

A request for extradition relating to a person who has been found guilty or convicted of the offense for which extradition is sought shall also be supported by:

***

b) In the case of a request by France, the original or a duly authenticated copy of the final judgment of conviction;

c) In all the cases where a sentence has been imposed, a statement of the remainder of the sentence to be served; and

d) In the case of a person who has been found guilty *in absentia,* the documents required by paragraph 3.

The documents which accompany an extradition request shall be received and admitted as evidence in extradition proceedings if:

***

b) In the case of a request from France, they are certified by the principal diplomatic or principal consular officer of the United States resident in France, as provided by the extradition laws of the United States, or they are certified or authenticated in any other manner accepted by the laws of the United States.

Extradition Treaty Between the United States of America and France, U.S.- Fr., Apr. 23, 1996, S. Treaty Doc. No. 105-13 (1997). Here, The government provided duly authenticated and translated copies of two international warrants for arrest (Opposition, Exhibits B and D.3), the two final judgments entered against Petitioner (Opposition, Exhibits C. 9 and D. 7), and a

statement of the remainder of the sentence to be served.[5]  Finally, as noted above, the offenses with which Petitioner was charged are within the scope of the Treaty.

Moreover, 18 U.S.C. § 3184 requires that a judge hold an extradition hearing.  The statute states, in pertinent part, that:

> If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, . . . , he shall certify the same, together with a copy of all testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

In reaching his determination that there was probable cause for the extradition, Judge Levy held a hearing, as required by 18 U.S.C. § 3184.

In addition to complying with the technical aspects of the extradition treaty, the court is also required to evaluate the substance of the extradition application by determining whether probable cause exists to believe that the Petitioner is guilty of the crimes charged. Under this standard, the government is not required to present evidence sufficient to justify a conviction, but rather must simply demonstrate probable cause to believe that the petitioner is guilty of the crime charged.  *Shapiro v. Ferrandina*. 478 F.2d 894, 901 (2d Cir. 1973).  "To establish the level of probable cause necessary to certify one for extradition, evidence must be produced that is 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'"  *Ahmad v. Wigen.* 726 F. Supp. 389, 399 (E.D.N.Y.

---

[5] In its opposition materials to this petition, the government did not provide the court with a statement of the remainder of the sentenced to be served.  However, a copy of such a statement was provided in the government's materials submitted as part of the extradition proceedings before Judge Levy.  According to the letter provided, Petitioner has yet to serve any portion of his sentences.

1989) (*quoting Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C.Cir.1973)); *see also, Sandhu v. Burke,* 97 CV 4608, 2000 WL 191707 (S.D.N.Y. 2000); *Valencia v. Scott,* 90 CV 3745, 91 CV 1959 , 1992 WL 75036 (E.D.N.Y. 1992); *In re Extradition of Atta,* 706 F. Supp. 1032 (E.D.N.Y. 1989).

Where a petitioner has been convicted after a trial at which he was present, simply a certified copy of a foreign conviction satisfied the probable cause requirement for an extradition order. *Spatola v. United States,* 925 F.2d 615, 618 (2d Cir. 1991). To the extent that Petitioner argues that the standard of proof is higher than probable cause because he was tried *in absentia*, he is in error. Where a defendant was convicted *in absentia*, the conviction is merely a charge and an independent determination of probable cause in order to extradite must be made. *See Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960) ("[a] foreign conviction *in absentia* does not preclude the federal court from considering whether sufficient evidence of the relator's criminality has been presented in the extradition proceeding before the United States Commissioner."); *In the Matter of Extradition of Ernst,* 97 CR.1PG.22*,* 1998 WL 395267 (S.D.N.Y., Jul. 14, 1998). In this case, Judge Levy made an independent determination of probable cause for both extradition requests.[6]

Moreover, the Treaty specifically mentions additional requirements for the extradition of individuals who have been found guilty *in absentia*. Extradition treaties are contracts between

---

[6] The January 26, 2005, request for extradition was made on the basis of the September 17, 2004 judgment. The January 19, 2005 request for extradition was made so that Petitioner could return to France to face the charges in the Créteil City High Court. The probable cause standard for granting an extradition request *before* a judgment is rendered (the January 19, 2005, request) is the same as the probable cause standard for granting extradition when a judgment was obtained *in absentia*. Similarly, by the time the January 19, 2005, extradition request was granted, Petitioner had been tried *in absentia* by the Créteil City High Court. Therefore, Judge Levy properly made independent probable cause determinations for both the January 19, 2006 and January 25, 2006 requests.

nations. As such, they should be interpreted by courts in accordance with the language of the treaty itself and the shared expectations of the contracting parties. *See, e.g., Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist. Of Iowa*, 482 U.S. 522, 533 (1987); *Air France v. Saks*, 470 U.S. 392, 399 (1985). Thus, it was the intention of France and the United States to extradite fugitives, like Petitioner, who have been condemned *in absentia* so long as the parties complied with certain procedural safeguards. *See, e.g., Gallina v. Fraser,* 278 F.2d 77 (2d Cir. 1960) (holding that a foreign conviction obtained *in absentia* is treated the same as any other conviction); *Esposito v. INS*, 936 F.2d 911 (7th Cir. 1991) (holding, in the context of deportation, that a foreign conviction obtained *in absentia* properly constitutes probable cause to believe that the petitioner is guilty of the crimes in question). The language of the Treaty and the intent of the contracting parties demonstrates that the Treaty was properly invoked in Petitioner's extradition proceedings.

Petitioner's primary argument is that his due process rights were violated because the government's proof was insufficient to establish probable cause that Petitioner committed the crimes he was charged with by France. As discussed throughout this opinion, based upon the evidence presented at the extradition proceeding, it was reasonable for Judge Levy to believe that there was ample probable cause to believe that Petitioner was guilty of the crimes charged.

The evidence submitted by the government in two trials, before two different tribunals, consisted of testimony from four of Petitioner's accomplices. Each testified that Petitioner was the head of a global cocaine distribution conspiracy. "Accomplice testimony, whether corroborated or not, is competent evidence to support a finding of probable cause [for extradition]." *United States of America v. Hunte,* 04 MJ 0721, 2006 WL 20773 (E.D.N.Y. 2006)

(applying a "totality of the circumstances" test to a determination of probable cause for extradition); *United States ex rel. Eatessami v. Marasco*, 275 F. Supp. 492, 494 (S.D.N.Y. 1967) (holding that hearsay evidence may be considered in an extradition proceedings.).

With respect to the January 26, 2005, extradition request, Sainte-Rose and Cardon implicated Petitioner as the head of the network and their testimony was consistent. Both testified that the cocaine was transported using fishermen from St. Lucia to a beach in Martinique where Petitioner would pick it up and begin the process of distributing the drugs though deputies such as Sainte-Rose and Cardon. Petitioner traveled to France with Sainte-Rose and Cardon. Moreover, Sainte-Rose correctly identified Petitioner as a former soccer player with a scar on his ear. (Opposition, Exhibit D.5).

With respect to the January 19, 2005, extradition request, Matime's and Dufrenot's testimonies and the taped telephone conversations implicate Petitioner in the drug conspiracy. Despite Petitioner's claims that Dufrenot's testimony and the wiretaps do not support a finding of probable cause because Dufrenot changed his testimony and Petitioner was not the person speaking with Matime on the calls, there is more than sufficient evidence to satisfy the probable cause requirement. For example, Matime and Dufrenot both testified that Dufrenot gave the cocaine to Matime and that Dufrenot requested that Matime bring the cocaine to Paris for the Petitioner. (Opposition, Exhibits C.4 and C.5). Dufrenot testified that he met Petitioner while in prison in 1992-1993. (Opposition, Exhibit C.4). Indeed, the French government produced evidence that Petitioner was incarcerated for a five-year term in Fort de France, Martinique at the same time as Dufrenot. (Opposition, Exhibit F). Dufrenot accurately described Petitioner and knew Petitioner's brother's name and profession.

Petitioner also challenges Judge Levy's probable cause determination on the grounds that Judge Levy erroneously denied him certain discovery. A defendant who challenges extradition is limited to evidence which explains, rather than contradicts, the government's proof. *Shapiro v. Ferrandina,* 478 F.2d at 905; *United States v. Hunte,* 04-M-0721, 2006 WL 20773, *6 (E.D.N.Y. Jan. 4, 2006). Accordingly, a judge presiding over an extradition hearing does not need to permit evidence which calls into question the credibility of the government's witnesses. *See Shapiro*, 478 F.2d at 905. Here, Petitioner's discovery was aimed at calling into question the credibility of the government's witnesses by challenging whether Matime correctly identified Petitioner as the individual on the taped conversations. The content of the conversations was not at issue. Petitioner never stated that the conversations were incorrectly translated or that their actual content was misrepresented by the French government. Petitioner claims only that it is not his voice on the tapes and that Martime misidentified Petitioner as the person he was speaking with. Unlike *Hunte*, here Petitioner was not attempting to use the discovery to establish an alibi. *See Hunte,* 2006 WL 20773 at *6. If Petitioner believes an error was made by the French court, he should have availed himself of the French process and brought his challenge to Martime's credibility in that forum. *Id.* Judge Levy properly excluded such evidence from the extradition proceeding.

Most importantly, evidentiary rulings of extradition courts generally are not subject to review in a habeas corpus proceeding. *See Charlton v. Kelly*, 229 U.S. 447, 457 (1913) ("[m]ere errors in the rejection of evidence are not subject to review by a writ of habeas corpus."); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984) ("[T]he wrongful exclusion of specific pieces of evidence, however important, does not render the detention illegal"). Courts have consistently upheld orders of extradition in cases where evidence was excluded during the

extradition hearings. *See Charlton v. Kelly,* 229 U.S. 447, 471 (1913); *Shapiro v. Fernandina* 478 F.2d. 894, 905 (2d. Cir. 1973); *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2 Cir. 1963);. *See also*, *Collins v. Loisel,* 259 U.S. at 315-316.

## Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus is denied in its entirety.

SO ORDERED

DATED: Brooklyn, New York
September 5, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge